All rise. Illinois Court Division is now in session. The Honorable Justice David R. Navarro is presiding. Thank you. You can be seated. Madam Clerk, could you call the case? 1-24-0543, Cooper v. Cook. Thank you. Good morning, everybody. In this manner, both sides will be given 15 minutes to argue their side of the case for the appellant. You're also given five minutes for rebuttal, so you don't have to reserve any time for rebuttal. If you could introduce yourselves when you approach the podium. I'll remind everybody that the microphones do a very good job of recording the proceedings, but not as good a job of amplifying your voice. So if you could keep your voice up, that would be helpful for us and the gallery. All right. You may proceed if you're ready. Chloe Ascension, Assistant Appellate Defender, representing Rick Cook in this matter. Good morning. Good morning. Good morning. Rick Cook was sentenced to six years in prison for possessing a gun that no one ever saw him hold, no one ever saw him throw. The body-worn camera footage from the arresting officers in this case don't show Rick Cook holding or discarding a gun. There was no fingerprints, no DNA, no witness statements. The state's evidence was weak, insufficient, and speculative, and they knew it. So they resorted to bombarding the jury with inflammatory, irrelevant testimony from start to finish of this trial. The first words out of the prosecutor's opening statement were a list of the worst crimes imaginable. Mass murder. Mass shootings. This included the nearby and recent mass murder in Highland Park. This continued through the testimony, eliciting irrelevant references to other crimes in the area. Officer Pocious, without any evidence, believed that Rick was at a repass. He said, quote, there has been shootings at those prior, multiple times in the district. Usually at the repasses there is a lot of drinking and smoking of cannabis, and it usually leads to a shooting. Counsel, as to these references to the mass shootings during the beginning of the opening statements, or any of Officer Pocious' testimony, were there any objections made at the time to those statements? No, Your Honor. To the opening statement, defense counsel did object and move for mistrial. Was that, that was, right. That's correct. But, in effect, that issue was fully litigated in the trial court. The trial court had the opportunity to decide and deny the motion for mistrial, and counsel preserved that issue by including it in the motion for a new trial. As to the other quotes. But doesn't it require, doesn't preserving that issue require an objection at the time, not the next day? This was effectively contemporaneous. Counsel explained that he didn't know where the state was going with that at the time. It was so shocking to hear a list of six places where mass shootings have occurred, where children have been murdered. And counsel did follow the appropriate procedure here to preserve this issue for appeal. As to the other statements, counsel did not object at the time, which is why ineffective assistance of counsel is the third argument raised in our brief. Those comments about a high crime area, about robberies of postmen, about drugs and multiple illegal guns, has nothing to do with whether or not Rick Cook possessed this gun. So why didn't defense counsel each and every time stand up and say, say that? That's the same question we have, Your Honor, which is why we're raising ineffective assistance of counsel. It's not trial strategy to have your client associated with crime. And it distracted from the issue here, which was that the state needed to prove possession of this firearm beyond a reasonable doubt, and they failed to do so here. But those arguments in terms of what the state proved or failed to prove were made to the jury, right? The jury, yes, as the fact finder, was responsible with reviewing the evidence. But the problem here was that this trial was unfair from the start. The first words out of the prosecutor's mouth, Sandy Hook, Aurora, Colorado, Ovade, Texas, Route 91 Harvest Music Festival, Paradise, Las Vegas, Nevada, Highland Park, Illinois. So it would seem that the trial court had some sense that this wasn't that case and gave an admonishment to the jury at the conclusion of the state's opening statement, right? That's correct, Your Honor. All right, a curative instruction of sorts. No, Your Honor. This did not cure the prejudice here. This is so inflammatory and so irrelevant, nobody can easily erase this imagery from their mind. We also have to picture this is the jury. At the very start of trial, they're sitting up at the prime of their attention. Maybe they have their notepads out. They're getting ready to listen to the evidence. And the first thing they hear about is Sandy Hook. This had nothing to do with Rick Cook. Clearly, those references, Ovade, Sandy Hook, had nothing to do, Highland Park had nothing to do with this case. But that wasn't part of the state's theory that went forward, going forward. The state didn't offer testimony regarding any one of those incidents, as terrible as they were. The state did offer evidence of other shootings. And that shooting narrative and the gun violence narrative was repeated throughout the trial. Koshy has testified about shootings he was aware of. The officers, without objection. Without objection. The state, in their brief, argues that they needed to show why the police were in that area and why they got out of the car in the first place. Do you want to respond to that? Their argument is that it was relevant for the context of why there was that incident. It was not relevant to the context. The only context the jury needed to know, and the reason for the stop, was because the officers were on patrol. They drove by and they smelled marijuana in the air and they saw a few people in the group smoking. And that was the justification for the stop. On the public way.  Okay. Correct. So that is the reason that these officers said they decided to stop. But they also said that they believed there were multiple illegal guns with a group like that. So, the only... They found three guns though, right? I'm sorry? They did find three guns, right? That's correct, your honor. So maybe they're right. The fact that the officers here found multiple guns and there were multiple people in the area actually weakens the state's case. The state still had to prove that this particular gun was possessed by Rick Cook and it failed to do so. But counsel, that argument, the argument you're making right now, was the argument made to the charged effect, to the jury, right? In terms of the weapon not being recovered from his hand, in terms of multiple weapons being found, that was the argument made to the jury by the defense counsel. It was, in essence, the argument. But the problem here is that the body-worn camera footage flatly contradicts this narrative that the state presented. And what's our review? What's our standard right now as we look at this case? We're reviewing this de novo for insufficiency. And the relief would be to vacate this conviction or, at a minimum, remand for a new trial. Because nothing about this trial is fair. So we shouldn't be looking at this in the light most favorable to the state? Under the sufficiency of the evidence argument? Of course, Your Honor. But even under that standard, the state still fails. When you watch that video, and I'm sure you have, when you watch it again, and you watch it slowed down frame by frame, when Rick Cook is running because he was ambushed by police in an unmarked vehicle, wearing plain clothes. It's 9.50 p.m. But they had vests on them that identified them as police officers, right? They did. But for all Rick Cook knew in that moment, they didn't otherwise identify themselves. How does he know they're not coming to harm him? He starts to walk back. And the police officers are running towards him, guns drawn. You can see this in the video. He turns and flees, a normal human reaction. The officers testified that they heard a cling or a ting sound, metal hitting metal, and they believed that that was a gun. They believed that that was him throwing the gun from his hand while running. But in the video, when we listen, that ting sound happens at 2149.57. At 2149.57, Rick Cook is running past a metal fence with a metal trash can next to it, full of metal aluminum cans, and the officers admit that he did bump into that trash can and that fence when he was running by. That is the only metal. Which of the officers admitted that? Potius, Your Honor. Officer Potius said that he did run into the fence. It's on the video, and it doesn't add up. When we move forward one second in time, this whole chase was 10 seconds long. I've got to tell you, breaking it down, it's almost harder to parse this out than watching the video, however you want to say it, real time or full speed. However, whether we parse it down or watch it full speed, regular speed, I get it. That, in connection with Potius' testimony, was what was presented to the jury at trial. And they had an opportunity to assess the credibility of the officer's testimony, didn't they? They didn't. Because the entire time, they're hearing about gun violence. They're hearing about high crime area. They're hearing about shootings. They're hearing about drugs. They're hearing about multiple illegal guns. They're hearing about robberies of postmen. They were not given the opportunity to do their job, to look at this evidence objectively, to analyze what is really being presented here. And if they had, especially with the video, where is this gun? This is an enormous gun. This is an extended magazine Glock. We would have seen it if he had thrown it in the way the state said he did. And the defense lawyer made that argument to the jury, didn't they? Yes, Your Honor. Okay. And so the jury heard that, and they saw the video, and they heard the testimony of the police officers. Where do you get a de novo standard review? What case do you have to support a de novo standard review on a sufficiency of the evidence claim? I apologize if I misspoke. Of course, the standard is in the light most favorable to the state. Are you saying when we're looking at the video? Yes, Your Honor. There is a case, People v. Shaw, which explains that this court on appellate review is able to review evidence that's not live testimony in the same position. You're not in a unique position as the jury would be. Okay. Yes. And the reason I keep coming back to the video is because that's the best evidence here of Rick Cooke's innocence. When he's at the point right parallel to the air conditioner where the gun was ultimately retrieved that was attributed to him. When he's parallel to that air conditioning unit, his arms are at his side. He's not seen holding or throwing anything, let alone this extended magazine Glock. There is lighting from the side of the house on his right-hand side. The police officer is running directly behind him, never out of sight. He has a flashlight illuminating the whole path. There's lighting on the back garage. It's like a white, blank background. You can see the complete outline of Rick Cooke's body. There's no weapon. There's no throw. There's no unknown object, which the officers testified. They admitted they never saw him with a gun, but they said, we saw him throw an unknown object. There is no unknown object. It's not there because it didn't happen. The state's evidence was weak, so they resorted to fear. Let me tell you about this egregious mass murder. Let me tell you about other crimes in the area. Let me tell you about shooting, shooting, shooting. There was no shooting here. Why are we talking about shootings? The prosecutor again referenced shooting in closing statement, referring to the officer's testimony, saying those shootings that they're aware about. Rick Cooke was not given a fair trial, and he was not proven guilty beyond a reasonable doubt. And that's why you should vacate his conviction. Thank you, Counsel. Thank you. Good morning, Your Honors. May it please the Court, Assistant State's Attorney Jessica Ball on behalf of the people. Your Honors, the jury heard and saw all of the evidence. They considered it. They evaluated it. And I think it's important to note in this case especially that the officers testified credibly that they didn't see the defendant with the gun in his hand. But they saw him with the hand by the waistband and that he immediately took off running. He wasn't ambushed. As the officers approached, you can tell on their video, they walked up. He was the only one in their group to take off running. They saw and heard him throw something. They heard the metal-on-metal sound, and they recovered the gun in his flight path. The body-worn camera corroborates all of this. It does not contradict it. It's hard to see everything on that video because it's shaky. The officers were running. But you can certainly see that it was dark, that the defendant fled. It shows his flight path. It shows his arm extended. It shows where the gun was recovered in the direction in which his arm was extended within minutes of him throwing it. And you can hear that metal-on-metal sound. The defendant argues that it was him running into the fence. The jury rejected that argument, and they were entitled to do so. Appellate counsel now gives alternate reasons for his flight and does that in her brief. Most of that falls under the reasonable hypothesis of innocent standard, which is old and outdated. She also argues that he fled because he was on probation in Iowa. But that evidence was not presented to the jury. It was argued in his motion for directed finding. She also gives race-based reasons for his flight in her brief. But he had a chance to introduce that at trial. Any of those race-based allegations are nothing other than an attempt to argue a new theory on appeal. Whether she calls it a frame or a lens, it's simply not allowed. It's forfeited. Likewise, she argues race-based reasons for the officer's initial approach. It's also forfeited. And the arguments made are the, well, it's really arguments made during the opening statement of the state's case regarding any one of those mass shootings. The opening statement issue is indeed forfeited, first of all. She has to make, the defense attorney has to make a contemporaneous objection when the comment was made. He didn't do that. That is black-letter forfeiture, and she does not argue for plain error. None of the cases cited by the defense says anything otherwise. If you do consider the defense argument, the trial court here took appropriate measures to cure any prejudice. First, at the end of the opening statement, the court said, out of an abundance of caution, he told the jury to disregard those comments and, more importantly, that they could not consider them in their decision-making. In addition to that, the court twice told the jury that the opening statements were not evidence, and the jury is presumed to follow those instructions. There's no indication otherwise in the record. What about counsel's argument that then the state leaned into these shootings references from the opening statements by having the officers give testimony regarding other shootings? So, initially, I'd like to point out that that is the only time the state's attorney made these comments regarding the mass shootings. Immediately after that, if you look at the opening statement as a whole and start there, right after that she went into the facts of the case, focused the jury's attention on that, and the applicable law. And she never repeated those comments, unlike any of the cases cited by the defense, and the defense attorney also told the jury at the end of the, in his closing argument, to disregard those comments. So, with respect to the opening statement and you look at that as a whole, it was limited. They didn't lean into it. They never argued that the defendant was the one that any gun had been fired in this. The other evidence regarding the prior crimes or the prior shootings was introduced in terms of course of investigation to explain why the police were there and patrolling, why they initially investigated. It was part of their proactive policing. It was properly admitted for that purpose. The jury, again, I'd just like to go back. The jury heard all of this evidence, all of the arguments that counsel made. She tries to take each piece of evidence individually to argue that it doesn't support the defendant's convictions, but we all know it's the totality of the evidence that's important and the reasonable inferences that flow from it. All of that supports the defendant's convictions, especially, as your honors noted, in the light most favorable to the state. And just to summarize with respect to the opening statement, if there was error, it was not reversible. The jury was advised specifically that it could not consider those comments in their consideration, in their deliberations. And there's nothing in the record that shows that they didn't heed those instructions. The other thing I can point out would just be with respect to her ineffective assistance of counsel claim. It was perfectly acceptable for trial counsel not to object to those portions of Officer Pocious's testimony, especially when you consider a trial attorney is trying to ingratiate himself with the jury and didn't want to object to things unnecessarily. He wanted to focus on his main argument, and he had them. And we know that because in his closing argument he explained and gave an alternate reason for the defendant's flight, that he was behaving suspiciously on the parkway and illegally smoking marijuana and drinking. And that was to give an alternate reason for his flight. That was a valid trial strategy. It was not ineffective assistance of counsel. With that, Your Honors, the people would rest on its brief, and we respectfully request you to affirm the defendant's convictions. Thank you, Counsel. This state is incorrect. The argument on implicit bias in the briefs is not new evidence. It is a framework. This is Rick Coates' reality in the United States. Courts routinely look at outside sources, and the jury in this case was read the Illinois Pattern Jury Instruction 101B, which talks about implicit bias. It explains that we all carry implicit biases. We're not always conscious of them. But when we have a case like this where those biases came to light and they were used to convict someone who was not proven guilty beyond a reasonable doubt, where the evidence didn't tie Rick Coates to this gun, there was no throw, there was no DNA, there was no fingerprints, there was no witness statement. It's not on the video. This court should vacate his conviction. If there's no further questions. Thank you, Counsel. Thank you. All right. Thank you, Counsel, for your well-argued presentations. We will take this matter under advisement and issue an opinion in due course. Thank you.